IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-01743-WJM-KLM

TERRI LYNN STROEDER,

     Plaintiff,

v.

JPMORGAN CHASE BANK, N.A., and
CHASE HOME FINANCE LLC,

     Defendants.

_____

## ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Partial Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)** [Docket No. 21; Filed August 31, 2012] (the "Motion").  Plaintiff filed a Memorandum of Law in Opposition to Defendant's Partial Motion to Dismiss [#26; Filed September 20, 2012] (the "Response") and Defendants filed a Reply in Support of Partial Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) [#33; Filed October 9, 2012] (the "Reply").  The Motion is referred to this Court for recommendation.  [#22].  The Court has reviewed the briefing, the record, and the applicable case law, and is fully advised in the premises.  For the reasons stated below, the Court **RECOMMENDS** that the Motion [#21] be **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

### A. Factual Allegations

Plaintiff, who proceeds in this matter *pro se*, initiated this action by filing a Complaint in the Jefferson County, Colorado, District Court on June 15, 2012.  *Complaint* [#4]. Defendants removed the action to federal court on July 5, 2012.  [#1].  Plaintiff alleges in the Complaint that on May 1, 2007, Forrest Charlesworth ("Charlesworth") executed a quit claim deed, thereby transferring to Plaintiff the real property located at 12158 W. Dorado Place, Unit 301 in Littleton, Colorado (the "Property").  [#4] at 2.  Plaintiff asserts that the quit claim deed was filed and registered in Jefferson County, Colorado on May 24, 2007. *Id.*

Plaintiff alleges that in July 2007, Defendants extended a Home Equity Line of Credit ("HELOC") to Charlesworth, without Plaintiff's knowledge, consent or authorization.  [#4] at 3.  Charlesworth and Defendants allegedly used the Property that had recently been transferred to Plaintiff as security for the HELOC.  *Id.*  Plaintiff alleges that Defendants recorded a deed of trust on June 15, 2007 identifying Charlesworth as the borrower, thus encumbering the Property.  *Id.*  On July 10, 2007, according to Plaintiff, Defendants advanced $135,000.00 to Charlesworth pursuant to the HELOC, again without Plaintiff's knowledge or consent.  *Id.*  According to Plaintiff, Charlesworth made all payments due under the HELOC between July and November 2007.  *Id*

Plaintiff alleges that Defendants subsequently told her that the HELOC needed to be placed in her name, suggesting that by accepting ownership of the Property pursuant to a quit claim deed, she was responsible for any loans and encumbrances on the Property. [#4] at 3.  Plaintiff alleges that at this time she remained unaware that Defendants had

secured Charlesworth's HELOC with the Property after the Property had already been transferred to her. *Id.* She claims that she did not become aware of the alleged invalidity of this encumbrance on her Property until June 2010. *Id.*

In the meantime, Plaintiff, believing that the Property was legitimately encumbered by the deed of trust to secure Charlesworth's HELOC, signed documents obligating her, in addition to Charlesworth, for the HELOC, even though she did not receive any funds from the HELOC. *Id.* at 4. A new deed of trust was filed on November 20, 2007 to reflect this change. *Id.* Plaintiff alleges that at no time did Defendants explain to her that she was not legally obligated to encumber her property with, or make payments toward, Charlesworth's debt. *Id.*

Plaintiff next alleges that on January 8, 2008, the HELOC was placed in her name only and a deed of trust reflecting that change was filed on January 29, 2008, though it was mistakenly filed by Defendants in El Paso County instead of Jefferson County where the Property is located. *Id.* Plaintiff contends that between January 2008 and July 2010 she complied with all terms of the HELOC agreement, including the payment of all required interest and fees. *Id.* She states that she remained unaware that she was not legally obligated to pay on the debt and that Defendants failed to so inform her. *Id.*

Plaintiff alleges that around June 2010 she learned from Charlesworth that he was moving out of state and that he had filed for bankruptcy. [#4] at 4. As a result, Plaintiff contends, she obtained documents pertaining to Charlesworth's HELOC agreement with Defendants. *Id.* Plaintiff alleges that she learned at that time that Defendants transferred funds pursuant to the HELOC to Charlesworth on July 10, 2007, two months after the Property had been conveyed to Plaintiff. *Id.* at 5. Plaintiff alleges that she further learned

that Charlesworth obtained the HELOC by using the Property, wholly owned by Plaintiff by that time, as collateral.  *Id.*  Plaintiff alleges that as a result of her discovery, she stopped making payments on the HELOC.  *Id.*

Plaintiff next alleges that between July 2010 and May 2012, she contacted Defendants numerous times in writing and by telephone to resolve the matter.  [#4] at 5. Plaintiff identifies in the Complaint several attempted contacts with Defendants.  *Id.* at 6-8. She contends that she received a response from Defendants in December 2010 stating that Plaintiff would be notified once the matter was resolved.  *Id.* at 6.  Plaintiff alleges that after a fourth letter to Defendants in March 2011, she received a response that contained the documentation showing Plaintiff to be the sole debtor for the HELOC.  *Id.* at 7. She further alleges that Defendants then began to threaten foreclosure of the Property.  *Id.* at 8.

Plaintiff next alleges that in May 2012 she attempted to sell the Property but was unable to do so because of the deed of trust Defendants had previously filed against the Property.  *Id.*  Plaintiff alleges that she had multiple offers for the Property, none of which were acceptable given the encumbrance.  *Id.* at 9.  Plaintiff further alleges that she has had multiple applications for credit denied as a result of Defendants' actions.  *Id.* at 9-10.

Additionally, Plaintiff contends that from October 2010 to the filing of the Complaint, Defendants have attempted to collect the HELOC debt from Plaintiff through multiple daily telephone calls and written communications.  *Id.* at 10.  She alleges that the telephone calls have included threats by Defendants to report her alleged delinquency to credit reporting agencies, which, Plaintiff contends, they have done.  *Id.*  She further alleges that the calls have been malicious, harassing and demeaning.  *Id.*

4

Plaintiff alleges that she has suffered significant financial harm, including damage to her credit, based on cancellations of credit lines and denials of new credit as a result of Defendants' actions.  [#4] at 10-11.  Plaintiff, who has her own real estate investment business, further alleges that because of Defendants' actions, she has suffered significant losses of income and profits.  *Id.*

### B.   Causes of Action

Based on these factual allegations, Plaintiff asserts eight causes of action: 1) Slander of Title; 2) Slander of Credit; 3) "Patterns and Practice and Breach of Contract"; 4) Negligence; 5) Fraud; 6) Defamation; 7) Outrageous Conduct; and 8) Quiet Title.  [#4] at 12-19.  For relief, Plaintiff seeks monetary damages, injunctive relief, and fees and costs.  *Id.* at 19-20.

## II.  ANALYSIS

Defendants argue that Plaintiff's second, fourth, fifth, sixth and seventh causes of action should be dismissed pursuant to Rule 12(b)(6).  [#21] at 3.  They contend that each of these counts fails to state a claim and should be dismissed as a matter of law.

### A.   Fed. R. Civ. P. 12(b)(6)

Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations."  *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass

a wide swath of conduct, much of it innocent, then the plaintiff[ ] [has] not nudged [her] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). However, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). That said, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests;" the 12(b)(6) standard does not "require that the complaint include all facts necessary to carry the plaintiff's burden." *Khalik*, 671 F.3d at 1192.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 129 S. Ct. at 1949 (citation omitted).

The Court is mindful that it must construe the filings of a *pro se* litigant liberally. *See*

*Haines v. Kerner*, 404 U.S. 594, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be the *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his or her] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).  In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

**B.    Application**

   **1.    Count Two: Slander of Credit**

   Defendants contend that Plaintiff's slander of credit claim fails as a matter of law because no such claim exists under Colorado law.  [#21] at 4.  In response, Plaintiff contends that slander of credit is recognized in other states.  [#26] at 4.  Additionally, Plaintiff suggests that Defendants should not be able to challenge the slander of credit claim because they removed this action to federal court, though she fails to explain how removal to federal court affects whether count two states a claim for relief.[1]  [#26] at 3-4. She further argues that although the term "slander of credit" may not be used in the Colorado statutes, the well-established tort of "interference with economic expectancy" is essentially the same claim asserted in count two. *Id.*  She contends therefore that dismissal of this claim is inappropriate. *Id.* at 4.  Defendants argue in the Reply that like slander of credit, no claim for "interference with economic expectancy" exists under

---

   [1] The fact that the case is pending in federal court does not mean that the laws of other states are applicable.  Because the property is located in Colorado, Colorado law applies.  *See Archer v. Eiland*, 64 F.App'x 676, 680 n.4 (10th Cir. 2003) (holding that in an action based on diversity jurisdiction, federal courts are to apply the law of the state where the property at issue is located).

Colorado law, and that even if it did, count two of Plaintiff's Complaint does not allege such a claim.  [#33] at 2.

Plaintiff's claim in count two for slander of credit identifies no statutory or common-law source establishing the existence of such a cause of action.  *See* [#4] at 14-15.  In *Jacobs v. Credit Suisse First Boston*, No. 11-cv-00042-CMA-KLM, 2011 WL 4537007, *5 (D.Colo. September 30, 2011), a judge in this district, finding "no cognizable claim of this sort," dismissed a claim for slander of credit where Plaintiff failed to identify a source for such a claim.  This Court's own research reveals no Colorado statutory or case-law source that recognizes a claim for slander of credit.  Likewise, although Plaintiff contends that the alternative claim of "interference with economic expectancy" is well-established, the Court's research again reveals no Colorado statutory or case-law source for such a claim.  Accordingly, the Court recommends that Plaintiff's claim in count two, whether it be characterized as a slander of credit claim or an interference with economic expectancy claim, be dismissed.

### 2.    Count Four: Negligence

Defendants next argue that Plaintiff's negligence claim must be dismissed because it is barred by the economic loss rule.  [#21] at 4-5.  Defendants contend that Plaintiff's negligence claim is premised on Defendants' allegedly negligent fulfillment of its contractual duties under the HELOC and the deed of trust.  *Id.*  As noted by Defendants, Plaintiff alleges in count three a breach of contract claim against Defendants in connection with the HELOC.  *Id.*  Defendants argue that because the economic loss rule prohibits a party from asserting a tort claim for a breach of a contractual duty, Plaintiff's negligence claim must be dismissed.  *Id.*

Plaintiff argues in the Response that her negligence claim is not premised on Defendants' negligent fulfillment of its contractual duties under the HELOC and deed of trust. [#26] at 6.  Rather, Plaintiff contends, the negligence claim is based on Defendants' decision to approve the HELOC to Charlesworth even though the debt was secured by property no longer owned by Charlesworth and instead owned by Plaintiff.  [#26] at 6. Thus, she contends that her negligence claim is premised on acts and representations that occurred before she entered the contract  with Defendants to repay the HELOC.  *Id.* at 7. Plaintiff argues that a tort claim may be asserted alongside a breach of contract claim when the conduct complained of is not merely a characterization of the acts that also constituted a breach of contract.  *Id.*  She claims that because the conduct that forms the basis for the negligence claim is different from the conduct upon which the breach of contract claim is based, her negligence claim should not be dismissed pursuant to the economic loss rule. *Id.* at 7-8.

Defendants argue in the Reply that Plaintiff's Complaint expressly states that Defendants acted negligently with respect to Plaintiff's HELOC, not with respect to Charlesworth's HELOC, as she now claims in her Response. [#33] at 5.  Defendants claim that because their only relationship with Plaintiff is contractual in nature, the economic loss rule precludes Plaintiff from seeking recovery in tort for alleged breaches of contractual duties.  *Id.*

Whether Colorado's economic loss rule bars a claim is a question of law.  *Standard Bank, PLC v. Runge, Inc.*, 443 F. App'x 347, 349 (10th Cir. 2011).  Pursuant to Colorado law, the economic loss rule provides that "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a

9

breach absent an independent duty of care under tort law." *Standard Bank*, 443 F. App'x at 349-50.  The stated purpose of the economic loss rule is three-fold: "(1) to maintain a distinction between contract and tort law; (2) to enforce expectancy interests of the parties so that they can reliably allocate risks and costs during their bargaining; and (3) to encourage the parties to build cost considerations into the contract because they will not be able to recover economic damages in tort." *Id.* at 351 (citing *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 72 (Colo. 2004)).  The economic loss rule may apply even in the absence of an explicit contract, if "the claimant seeks to remedy only an economic loss that arises from interrelated contracts." *Id.* at 350.

In determining whether the economic loss rule is applicable, the Court must focus "on the source of the duty alleged to have been breached." *Id.*  A duty arising in tort must be "sufficiently independent of the contract to preclude application of the economic loss rule." *Id.* at 351.  A tort duty that is sufficiently independent of the contract at issue must meet two conditions: "[f]irst, the duty must arise from a source other than the relevant contract[;] [s]econd, the duty must not be a duty also imposed by the contract." *Registry Sys. Int'l, Ltd. v. Hamm*, No. 08-cv-00495-PAB-MJW, 2010 WL 326327, at *10 (D. Colo. Jan. 20, 2010) (citing *Haynes Trane Serv. Agency, Inc. v. Am. Standard, Inc.*, 573 F.3d 947, 962 (10th Cir. 2009)).  Broadly, "[t]ort obligations generally arise from duties imposed by law . . . without regard to any agreement or contract," and "[c]ontract obligations, on the other hand, 'arise from promises made between parties [to] allocate risks and costs during bargaining.'" *Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1162 (10th Cir. 2008) (citing *Town of Alma v. Azco Constr., Inc.*, 10 P.3d 1256, 1262 (Colo. 2000)).

Although Plaintiff's negligence claim contains only two short paragraphs, it also

incorporates the 94 paragraphs of allegations that precede it.   [#4] at 16.   Within the

negligence claim itself, Plaintiff alleges that Defendants negligently placed an encumbrance

against the title of her property in the amount of $135,000.00 and that the encumbrance did

not exist prior to Defendants' negligent acts.  *Id.*  Plaintiff further alleges that Defendants'

negligence caused her substantial harm.  *Id.*

Considering all the factual allegations as incorporated into count four, and taking

Plaintiff's allegations as true, as the Court must, the Court finds that Plaintiff has sufficiently

stated a cause of action for negligence that is not barred by the economic loss rule.  The

Court finds that Plaintiff has alleged conduct in support of her negligence claim that is

separate and apart from the conduct on which the breach of contract claim is based.

Specifically, as set forth in the factual allegations section above, Plaintiff alleges that

Defendants issued a HELOC to Charlesworth and allowed him to secure the debt with the

Property even though the Property had previously been conveyed to Plaintiff.   Construing

these allegations liberally, as the Court is required to do for *pro se* litigants, Plaintiff appears

to allege that Defendants had a duty to determine the actual owner of the Property before

issuing a deed of trust against the Property to secure Charlesworth's HELOC.[2]  The Court

finds that Defendants' obligations from this alleged duty arise separately from the

obligations imposed by the contractual relationship between Plaintiff and Defendants.  The

contractual relationship between Plaintiff and Defendants stems from the HELOC

agreement Plaintiff signed in 2008, in which Plaintiff accepted sole responsibility for the

HELOC debt based on her belief that the debt was incurred while Charlesworth still owned

the Property.  Thus, as Plaintiff argues, it appears that the conduct on which the negligence

---

[2] The Court expresses no opinion as to whether Colorado law supports the existence of the duty alleged by Plaintiff.

claim is based predates the parties' contractual relationship and thus is different from the conduct that forms the basis for the breach of contract claim.  For these reasons, the Court recommends that Defendants' request to dismiss Plaintiff's negligence claim be denied.

### 3.    Count Five: Fraud

Defendants next argue that Plaintiff's fraud claim should be dismissed.  [#21] at 7-8. Defendants argue that the claim is barred by Colorado's Credit Agreement Statute of Frauds (the "CCASF") at C.R.S. § 38-10-124(2).  *Id.* at 7.  They argue that the statute prohibits an action relating to a credit agreement where the principal amount exceeds $25,000.00 unless the agreement is in writing and signed by the party against whom enforcement is sought.  *Id.*  Defendants contend that Plaintiff's fraud claim is premised on alleged oral representations Defendants made in connection with the HELOC signed by Plaintiff.  *Id.* at 8.  Consequently, they argue, the fraud claim is barred by the CCASF.  *Id.* Additionally, Defendants argue that to the extent Plaintiff's fraud claim is based on an alleged "fiduciary business relationship" between Plaintiff and Defendants, the claim must fail because, as a matter of law, no such relationship exists.  *Id.*

Plaintiff argues in the Response that because her agreement with Defendants is in writing and signed by the party against whom enforcement is sought, she is in compliance with the CCASF and thus may maintain a claim for fraud.  [#26] at 10.  Plaintiff further argues that Defendants' oral representations leading up to the execution of the HELOC between her and Defendants constitute admissible extrinsic evidence.  *Id.* at 11.  She argues that the CCASF does not preclude the use of such evidence when offered to show the intended meaning of a facially ambiguous credit agreement.  *Id.*  Plaintiff further argues that a fiduciary relationship existed between her and Defendants based on the banking

relationship that existed between them prior to the execution of the HELOC and deed of trust. *Id.* at 11-12. Plaintiff also argues that her fraud claim is pled with sufficient specificity pursuant to Fed. R. Civ. P. 9(b), though Defendants do not argue otherwise. Id. at 12.

In the Reply, Defendants argue that Plaintiff's contention that the oral representations that form the basis for the fraud claim constitute extrinsic evidence is irrelevant to whether the CCASF bars Plaintiff's fraud claim. [#33] at 8. Regarding Plaintiff's assertion of a fiduciary relationship, Defendants argue that a mere banking relationship is insufficient to establish a fiduciary relationship and that no such relationship exists by virtue of their borrower-lender relationship. *Id.* at 9.

The CCASF "provides [that] no debtor or creditor may maintain an action relating to a credit agreement involving a principal amount in excess of $25,000, unless the credit agreement is in writing and signed by the party against whom enforcement is sought." *CoBank, ACB v. Reorganized Farmers Coop. Ass'n*, 170 Fed. Appx. 559, 564 (10th Cir. 2006) (unpublished decision) (citing Colo. Rev. Stat. § 38-10-124(2)).

> The plain language of the statute renders representations, warranties, or omissions in connection with credit agreements inoperative unless they are reduced in writing. Thus, as a matter of law, reliance upon such representations made in connection with negotiations for credit agreements or their waiver, modification, or extension can neither be reasonable nor justifiable.

*Norwest Bank Lakewood, Nat'l Ass'n v. GCC Partnership*, 886 P.2d 299, 302 (Colo.App. 1994). The application of the CCASF is purposefully broad to "discourage lender liability litigation," and "abrogate judicially developed exceptions to the statute of frauds... which could otherwise provide a basis for enforcing an oral loan agreement." *Schoen v. Morris*, 15 P.3d 1094, 1098-99 (Colo. 2000) (citation omitted).

"As the plain language of the statute indicates, section 38-10-124 does not only

apply to claims involving transactions which are characterized exclusively as credit agreements, but also applies to claims which merely relate to credit agreements involving a principal amount exceeding $25,000." *Univex Int'l, Inc. v. Orix Credit Alliance, Inc.*, 914 P.2d 1355, 1358 (Colo. 1996).  The application of the CCASF is not limited to contractual claims, but also bars any related tort claims which rely on alleged oral representations pertaining to a credit agreement.  *See, e.g.*, *Lang v. Bank of Durango*, 78 P.3d 1121, 1123-24 (Colo. Ct. App. 2003) (holding that statute barred claims for fraud and unjust enrichment arising from oral assurances regarding a credit agreement); *Hewitt v. Pitkin County Bank and Trust Co.*, 931 P.2d 456, 459 (Colo.App. 1995) (holding that statute barred claims for breach of fiduciary duty, negligent misrepresentation and outrageous conduct where, according to plaintiff, bank orally agreed to loan modifications and not to commence foreclosure proceedings); *Norwest Bank*, 886 P.2d at 302 (holding that statute barred all tort claims arising from oral promises during negotiations to modify credit agreement).

Here, Plaintiff alleges in her fraud claim that Defendants intentionally misrepresented to her that the Property, which she acquired on May 1, 2007, was subject to a previously existing encumbrance.  [#4] at 17.  Plaintiff alleges that Defendants' failure to inform her that she was not responsible for Charlesworth's HELOC, in that it was executed after Plaintiff owned the Property outright, was an intentional concealment that benefitted Defendants.  *Id.*  She alleges that Defendants knew or should have known that their representations were false and that Defendants acted recklessly and without regard for the truth when they failed to advise Plaintiff of her actual obligations.  *Id.*  Plaintiff alleges that she relied on Defendants' inaccurate and dishonest representations and suffered harm as a result.  *Id.*  Plaintiff further alleges that Defendants concealed material information in

14

violation of their fiduciary relationship to Plaintiff as creditor-borrower.  *Id.*

The Court finds that the broad language of the CCASF applies here such that Plaintiff's fraud claim is barred.  The oral representations and concealments Plaintiff alleges in support of her fraud claim are clearly related to Plaintiff's credit agreement with Defendants, and Plaintiff does not argue otherwise.  Thus, Plaintiff may not maintain a claim for fraud that arises from those oral representations and concealments.  *See Lang*, 78 P.3d at 1123-24.

Moreover, Plaintiff's argument that the alleged misrepresentations by Defendants may be introduced to resolve the intended meaning of a facially ambiguous credit agreement is unavailing.  Plaintiff is not alleging that the credit agreement (i.e., the HELOC) between her and Defendants is an ambiguous contract for which extrinsic evidence is necessary for interpretation.  Rather, Plaintiff's fraud claim is based on her allegations that Defendants essentially deceived her into entering the credit agreement by suggesting to her that the encumbrance on the Property resulting from Charlesworth's HELOC was in place before the Property was conveyed to her, and/or that Defendants deceived her by convincing her that she had a legal obligation to pay the HELOC because she took ownership of the Property by a quit claim deed (compare ¶¶ 19 and 30-31 of Complaint). Regardless, Plaintiff's argument is inapplicable here in light of the bases for her fraud claim. For these reasons, the Court finds that Plaintiff's fraud claim is barred by the CCASF.

The Court further finds that to the extent Plaintiff's fraud claim is based on an alleged fiduciary relationship between her and Defendants, the allegations fail to state a claim.  "In the absence of special circumstances, the relationship between a lending institution and its customer is merely one of creditor and debtor."  *Premier Farm Credit, PCA v. W-Cattle,*

*LLC*, 155 P.3d 504, 523 (Colo.App. 2006).  A creditor and debtor relationship does not rise to the level of a fiduciary relationship.  *See id.*  Plaintiff has not alleged special circumstances that show a fiduciary relationship exists here.  Thus, because as a matter of law there is no fiduciary relationship, Plaintiff's fraud claim, to the extent it is based on such a relationship, fails to state a claim.  The Court therefore recommends that Plaintiff's fraud claim be dismissed.

### 4.    Count Six: Defamation

Defendants next argue that Plaintiff's defamation claim must be dismissed because it is barred by the Fair Credit Reporting Act (the "FCRA").  [#21] at 4.  Defendants contend that Plaintiff's defamation claim is based on Defendants' alleged failure to use reasonable care in reporting Plaintiff's default under the HELOC to credit reporting agencies.  *Id.* Defendants assert that the limitation of liability provision of the FCRA expressly prohibits an action for defamation with respect to the reporting of information to a consumer reporting agency.  *Id.*

Plaintiff asserts in the Response that the FCRA provision cited by Defendants contains an exception for "'false information furnished with malice or willful intent to injure such consumer.'"  [#26] at 4 (quoting 15 U.S.C. § 1681h(e)).  Plaintiff argues that the exception applies here.  *Id.*  Plaintiff further argues that under the FCRA, Defendants must comply with state law.  *Id.* at 5.  She claims, therefore, that she is entitled to maintain her defamation claim despite the provision relied on by Defendants.  *Id.*  Finally, Plaintiff appears to argue that Defendants failed to comply with their obligations under the FCRA. *Id.*

Defendants argue in the Reply that Plaintiff's argument regarding how Defendants

allegedly failed to comply with their duties under the FCRA is irrelevant to her claim for defamation. [#33] at 3. They further argue that although persons subject to the FCRA must generally comply with state law, the limitation of liability provision clearly precludes state law defamation claims in this context. *Id.* at 4. Consequently, they contend, Plaintiff's defamation claim should be dismissed.

The limitation of liability provision of the FCRA at 15 U.S.C. § 1681h(e) provides that "no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of [credit] information ... except as to false information furnished with malice or willful intent to injure such consumer." Allegations of malicious conduct are sufficient to bring a claim "within the express exception to [this section's] preemption rule, even if the claim would otherwise be preempted under that section." *Llewellyn v. Shearson Financial Network, Inc.*, 622 F.Supp.2d 1062, 1065 (D.Colo. 2009) (citing *Morris v. Household Mortgage Services*, 350 F.Supp.2d 786, 788 (N.D.Ill. 2004), which held that preemption under this section did not apply to a defamation claim that alleged malicious conduct)).

Plaintiff alleges in her defamation claim that Defendants "made regular and consistent claims of delinquency about the Plaintiff to various credit bureaus...." [#4] at 18. Plaintiff contends that the credit bureaus knew that the information was provided by Defendants and that it was meant to show that Plaintiff had defaulted on the HELOC and that she was at her maximum credit limit since the inception of the HELOC. *Id.* at 19. Plaintiff further alleges that Defendants failed to use reasonable care to determine the truth or falsity of their statements to the credit bureaus and that the statements were damaging and defamatory. *Id.*

Plaintiff also incorporates by reference into her defamation claim all previous allegations in the Complaint. *Id.* at 18.  Some of those allegations pertain to the defamation claim.  Specifically, Plaintiff alleges that Defendants' "malicious, harassing and demeaning" phone calls to her in an attempt to collect the alleged debt included threats to report Plaintiff's alleged delinquency to the credit reporting agencies, which, she claims, they have done.  [#4] at 10.  Moreover, Plaintiff alleges that Defendants knew she was not legally obligated to pay the debt or maintain the encumbrance on the Property yet they failed to so inform her.  [#4] at 4.  She further alleges that she "has suffered derogatory and slanderous credit reporting as a direct result of these malicious actions of defendant." [#4] at 11.

The Court finds that Plaintiff has sufficiently alleged malicious conduct by Defendants with respect to their reporting of information to credit reporting agencies to fall within the express exception to the preemption rule in 15 U.S.C. § 1681h(e).  Plaintiff's allegations that Defendants reported harmful information about her to the credit reporting agencies despite knowing that the debt she allegedly owed them was invalid rise to the level of malicious conduct.  The Court therefore finds that the exception to the limitation of liability provision of the FCRA applies here such that Plaintiff's defamation claim is not barred.  As a result, the Court recommends that Defendants' request to dismiss that claim be denied.

### 5.    Count Seven: Outrageous Conduct

Finally, Defendants seek dismissal of Plaintiff's outrageous conduct claim.  [#21] at 6.  Defendants argue that Plaintiff's claim fails to allege any conduct that rises to the level

of actionable "outrageous conduct." *Id.* They further contend that Plaintiff's conclusory assertions of the elements of such a claim are insufficient to state a claim for relief. *Id.*

Plaintiff argues in the Response that her claim for outrageous conduct should not be dismissed because the factual allegations in the Complaint support such a claim. [#26] at 8. She contends that the mere fact that Defendants encumbered her Property in 2007 to secure the debt "of an unrelated third party is outrageous." *Id.* Plaintiff identifies other facts that she claims also demonstrate outrageous conduct. *Id.* She argues that she has adequately alleged an outrageous conduct claim and that Defendants' request to dismiss the claim should be denied. *Id.* at 9-10.

In the Reply, Defendants assert that "[t]his action arises out of Plaintiff's belief that her property was improperly encumbered and that she was somehow deceived into executing the HELOC and Deed of Trust, under which she voluntarily made payments for more than two years before defaulting." [#33] at 6. Defendants contend that any encumbrance on the Property was "released and replaced" when Plaintiff executed the HELOC and deed of trust in favor of Defendants. *Id.* They argue therefore that the conduct Plaintiff contends is outrageous falls well short of the standard to state an outrageous conduct claim. *Id.* at 6-7.

To state a claim for outrageous conduct under Colorado law, a plaintiff must allege that (1) the defendant engaged in extreme and outrageous conduct, (2) the defendant did so recklessly or with the intent of causing the plaintiff severe emotional distress, and (3) the conduct did indeed cause the plaintiff severe emotional distress. *Llewellyn v. Shearson Financial Network, Inc.,* 622 F.Supp.2d 1062, 1068-69 (D.Colo. 2009) (citing *Green v. Qwest Services Corp.,* 155 P.3d 383, 385 (Colo.App. 2006)). For a defendant's conduct

to be outrageous, it must be "so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *McCrary v. Aurora Public Schools,* 57 F. App'x 362, 374 (10th Cir. 2003) (unpublished) (quoting *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999)).  Moreover, "[c]onduct, otherwise permissible, may become extreme and outrageous if it is an abuse by the actor of a position in which he [or she] has actual or apparent authority over the other, or the power to affect the other's interests."  *Pearson v. Kancilia*, 70 P.3d 594, 598 (Colo.App. 2003) (citation omitted).  Whether the alleged conduct is sufficiently outrageous is, at least initially, a question of law for the court.  *Green*, 155 P.3d at 385.  Outrageous conduct claims are also known as claims for intentional infliction of emotional distress. *Llewellyn*, 622 F.Supp.2d at 1068.

Here, the Court need not reach the question of whether Plaintiff's allegations state a claim for outrageous conduct because even if they do, the claim is barred by the CCASF. Like Plaintiff's fraud claim, the CCASF bars outrageous conduct claims based on oral representations in connection with a credit agreement.  *See, e.g.*, *Schoen v. Morris*, 15 P.3d 1094, 1096, (Colo. 2000) (holding that statute barred claim for outrageous conduct, among others, arising from oral representations made to an interim lender by a permanent lender); *Hewitt v. Pitkin County Bank and Trust Co.*, 931 P.2d 456, 459 (Colo.App. 1995) (holding that statute barred claim for outrageous conduct arising from alleged oral representation by bank to modify loan and not commence foreclosure proceedings); *Norwest Bank*, 886 P.2d at 302 (holding that statute barred all tort claims arising from oral promises during negotiations to modify credit agreement).

Although Plaintiff's allegations in her outrageous conduct claim are conclusory, they

relate to Plaintiff's credit agreement with Defendants.  *See* [#4] at 19.  The Court therefore finds that, like the fraud claim, the CCASF applies here and bars Plaintiff's outrageous conduct claim.  *See Schoen*, 15 P.3d at 1096.  Accordingly, the Court recommends that Plaintiff's outrageous conduct claim be dismissed.

### III. Conclusion

Based on the foregoing analysis,

IT IS RESPECTFULLY **RECOMMENDED** that the Motion [Docket No. 21; Filed August 31, 2012] be **GRANTED in part** and **DENIED in part**.  The Court recommends that the Motion be granted as to counts two, five and seven and that those counts be dismissed. The Court recommends that the Motion be denied as to counts four and six.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  February 7, 2013

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge